IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY LIEBL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: 06 C 5364 |
| v. | ) | |
| | ) | Suzanne B. Conlon, Judge |
| MERCURY INTERACTIVE | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Jeffrey Liebl sues his former employer, Mercury Interactive Corporation ("Mercury"), for breach of contract. He seeks damages for Mercury's alleged refusal to allow him to exercise stock options pursuant to his separation agreement. Mercury maintains that his claim is subject to arbitration in Santa Clara County, California, and moves to dismiss the first amended complaint for improper venue under Federal Rule of Civil Procedure 12(b)(3). In the alternative, Mercury moves to stay the proceedings pending arbitration pursuant to section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* For the reasons set forth below, the motion is denied.

## BACKGROUND

The following facts are derived from the first amended complaint and from the parties' pleadings. In considering a motion to dismiss for improper venue, the court accepts all well-pleaded allegations as true, unless contradicted by the defendant's affidavits. *Nagel v. ADM Investor Servs.*, 995 F. Supp. 837, 843 (N.D. Ill. 1998). The court may also examine facts outside the complaint without converting the motion to one for summary judgment. *Id.; see also Cont'l Casualty Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005). Liebl joined Mercury in 2000 as a sales

director. Am. Compl. at ¶ 6. His employment terminated on September 8, 2006. *Id.* at ¶ 12. During Liebl's employment, he executed a number of agreements with Mercury. These agreements include: (1) the Proprietary Information Agreement (Pl. Resp. Ex. B); (2) the Mercury Interactive Dispute Resolution Policy (Def. Mot. Ex. 1); (3) several Stock Option Agreements (which incorporate by reference the 1999 Stock Option Plan) (Am. Compl. Exs. C and D); and (4) the Separation Agreement (Am. Compl. Ex. A).

When Liebl joined Mercury, he signed the Proprietary Information Agreement. Pl. Resp. Ex. B. It does not contain an arbitration clause. *Id.* During his employment, Mercury granted Liebl options to purchase company stock. Am. Compl. at ¶¶ 13-14. The options are governed by identical Stock Option Agreements. *Id.* at ¶ 16 and Ex. C. The Stock Option Agreements incorporate by reference Mercury's 1999 Stock Option Plan. *Id.* at ¶ 17 and Ex. D. The Stock Option Agreements and Plan provide that in the event of termination, an employee must exercise his options within thirty days or the options terminate. *Id.* at ¶¶ 19-21. Neither the Stock Option Agreements nor the Plan contain an arbitration clause. *Id.* at Exs. C and D.

On January 29, 2006, Liebl executed the 2006 Sales Compensation Plan. Def. Mot. Ex. 3. The Dispute Resolution Policy was attached as an exhibit to the 2006 Sales Compensation Plan. *Id.* Liebl initialed each page of the Dispute Resolution Policy. *Id.* The Dispute Resolution Policy applies to disputes during and after employment, and requires binding arbitration of "any and all controversies, claims or disputes . . . arising from or relating to or resulting from [his employment with Mercury], including breach of any agreements between [Liebl and Mercury]." *Id.* Ex. 3, Ex. E at ¶ 1. The policy provides that disputes concerning arbitrability are to be determined by the arbitrator. *Id.* at ¶ 5. Arbitration shall take place in Santa Clara County, California. *Id.* at ¶ 2. Any

2

modification or amendment of the Dispute Resolution Policy must be "in writing signed by the party to be charged." *Id.* at General Provisions ¶ 2.

In April 2006, Mercury and Liebl agreed to terminate their relationship. Am. Compl. at ¶ 7. Mercury prepared and signed a Separation Agreement, dated May 30, 2006. *Id.* at ¶ 9 and Ex. A. Liebl executed the Separation Agreement on June 5, 2006. *Id.* According to its terms, Liebl's separation date was September 8, 2006. *Id.* at ¶ 1. The Separation Agreement expressly affirms the Proprietary Information Agreement. *Id.* at ¶ 5 ("[y]ou hereby affirm all of the provisions set forth in the Mercury Interactive Corporation Proprietary Information Agreement, which you signed upon joining the Company"). The Separation Agreement also incorporates Mercury's obligations under the Stock Option Agreements by providing that "[a]fter your Separation Date, you will have 30 days to exercise your vested stock options in accordance with the terms of the applicable option agreement." *Id.* at ¶¶ 10-12; Ex. A at ¶ 4. The Separation Agreement contains a release, providing that "[w]ith the exception of the breach of this agreement by Mercury, you waive and release and promise never to assert any and all claims that you have or might have against Mercury . . . arising from or related to your employment with Mercury and/or the termination of your employment with Mercury or any other claim, duty, obligation or cause of action relating to any matters of any kind." *Id.* Ex. A at ¶ 7. The Separation Agreement does not include an arbitration clause. *Id.* at Ex. A.

After his separation date, Mercury sent Liebl the Proprietary Information, Assignment of Inventions, and Arbitration Agreement. Pl. Resp. at 5, Ex. A. This agreement contains an arbitration clause. *Id.* Liebl refused to execute the agreement. *Id.* at 5-6, Ex. A.

On May 1, 2006 Mercury imposed a company-wide blackout prohibiting the exercise of any stock options. *Id.* at ¶¶ 25-26. Liebl attempted to exercise his options within thirty days of his

3

separation date of September 8th. *Id.* at ¶ 35. Mercury refused his right to exercise the options. *Id.* at ¶ 39. Mercury also refused his request for an extension of time to exercise the options. *Id.* at ¶¶ 43-44. Liebl filed his complaint and moved for a temporary restraining order and preliminary injunction. Dkt. Nos. 1 and 7 (Oct. 3 and 4, 2006). His motion was denied. Dkt. No. 13 (Oct. 6, 2006) (Filip, J.). Mercury sent a letter to Liebl expressing its view that his claim must be submitted to arbitration and requesting that he agree to arbitration. Def. Mot. Ex. 2.[1]

## DISCUSSION

### I. Legal Standard

A case may be dismissed for lack of proper venue. Fed. R. Civ. P. 12(b)(3). Dismissal is appropriate when the forum selection clause of a contract requires arbitration in another district. *Cont'l Casualty*, 417 F.3d at 733. The plaintiff bears the burden of establishing that venue is proper. *Nagel*, 995 F. Supp. at 843. Under Rule 12(b)(3), the court is "not obligated to limit its consideration to the pleadings nor to convert the motion to one for summary judgment." *Cont'l Casualty*, 417 F.3d at 733; *see also Nagel*, 995 F. Supp. at 843 (a court may examine facts outside the complaint to determine whether venue is proper). The court must resolve factual conflicts in the parties' submissions and draw any reasonable inferences in plaintiff's favor. *Nagel*, 995 F. Supp. at 843. Any written instrument attached as an exhibit to a pleading is considered a part of the pleading. Fed. R. Civ. P. 10(c).

When a party moves for a stay of proceedings pending arbitration, the court shall grant the stay if it is satisfied the issue involved is referable to arbitration under the agreement. 9 U.S.C. § 3.

---

[1] Mercury has now filed a motion in the Superior Court of California to compel arbitration in Santa Clara County.

A formal request for arbitration is not required to grant a stay. *Briggs & Stratton Corp. v. Local 232 Int'l Union, Allied Indus. Workers of Am. (AFL-CIO)*, 36 F.3d 712, 716 (7th Cir. 1994) (formal demand is not necessary to show that an issue is referable to arbitration; a request in the course of litigation is sufficient). The question of arbitrability is for judicial determination "unless the parties clearly and unmistakably provide otherwise." *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986). Whether an issue is arbitrable is a matter of contract interpretation; "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). In deciding whether the parties agreed to arbitrate an issue (including arbitrability), the court should apply state law principles governing the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Any doubts with respect to arbitrability should be resolved in favor of arbitration. *James v. McDonald's Corp.*, 417 F.3d 672, 676-77 (7th Cir. 2005) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (FAA embodies a "liberal federal policy favoring arbitration agreements")).

## II.     Arbitrability

Mercury argues Liebl's claim is subject to arbitration because he is bound by the Dispute Resolution Policy's broad arbitration clause. The Dispute Resolution Policy provides for binding arbitration of all disputes, including arbitrability, in Santa Clara County, California. Def. Mot. Ex. 1 at ¶¶ 1, 2 and 5. Liebl argues that the Separation Agreement released Mercury's obligations to Liebl, including under the Dispute Resolution Policy, except obligations specifically created or affirmed by its terms. The Separation Agreement does not specifically affirm the Dispute Resolution

Policy. Am. Compl. Ex. A. The Separation Agreement does not contain an arbitration clause, nor do any of the agreements it affirms. *Id.* Therefore, Liebl argues, his claim for breach of the Separation Agreement is not subject to arbitration.[2]

The Dispute Resolution Policy provides that the issue of arbitrability shall be determined by the arbitrator. Def. Mot. Ex. 3 at ¶ 5. However, the parties dispute whether obligations under the Dispute Resolution Policy survived after the Separation Agreement was executed. In light of the uncertainty about the Dispute Resolution Policy's continuing validity, the court cannot find "clear and unmistakable" evidence of an agreement by the parties to refer the question of arbitrability of the present issues to an arbitrator. *AT&T Technologies*, 475 U.S. at 649. Accordingly, the question of arbitrability is properly before the court. *Id.*

In deciding whether Liebl and Mercury agreed to arbitrate his claim, the court applies Illinois law governing the formation of contracts.[3] *First Options*, 514 U.S. at 944. Under Illinois law, a separation agreement containing a general release supersedes an original employment agreement. *Acme-Wiley Holdings, Inc. v. Buck*, 799 N.E.2d 337, 344 (Ill. App. 3d Dist. 2003). In *Acme-Wiley Holdings*, an employee signed a mutual release with his employer from "any and all claims related to or arising from [his] association [with his employer] and [his] employment." *Id.* at 338-39. His original employment agreement contained an arbitration clause, but his separation agreement did not.

---

[2] Mercury argues that Liebl's claim arises from the Stock Option Agreements and Plan, not the Separation Agreement. But Liebl's amended complaint clearly alleges breach of the Separation Agreement. Am. Compl. at § 1.

[3] The Dispute Resolution Policy is governed by California law, but the parties do not take the position that California law controls. Def. Mot. Ex. 1, General Provisions ¶ 1. The law of the forum state, Illinois, is applied. *Gould v. Artisoft, Inc.*, 1 F.3d 544, 549 n.7 (7th Cir. 1993) ("[w]here the parties have not identified a conflict between the two bodies of state law that might apply to their dispute, we will apply the law of the forum state").

*Id.* at 339. He later declared that his separation agreement was unenforceable. The employer initiated arbitration, and the employee sought a stay on the grounds that the separation agreement contained no arbitration clause. *Id.* The appellate court, relying on extra-jurisdictional authority, held that the clear and unambiguous language of the release could not be interpreted to mean anything else but that the employment agreement was "history." *Id.* at 344. Because the separation agreement did not contain an arbitration clause, it was clear the parties never intended to submit their dispute regarding its validity to arbitration. *Id.*

Liebl's Separation Agreement unilaterally releases Mercury from "any and all claims . . . arising from or related to [Liebl's] employment with Mercury and/or the termination of [his] employment with Mercury or any other claim, duty, obligation or cause of action relating to any matters of any kind." Am. Compl. Ex. A at ¶ 7. The only exception is for claims based on Mercury's breach of the Separation Agreement. *Id.* The language of the release, and the Separation Agreement as a whole, make clear that the parties intended for it to be the final agreement between them. The Separation Agreement governs all aspects of their relationship, including compensation and benefits. *Id.* at ¶ 3. It was signed after all other agreements. *Id.* Even though it is a unilateral rather than mutual release, the final agreement indicates the parties' intent to release Mercury's obligations under prior agreements not specifically affirmed. *See Zandford v. Prudential-Bache Securities, Inc.*, 112 F.3d 723, 727 (4th Cir. 1997) (arbitration not required on the authority of an arbitration clause in an employment agreement because the language of a unilateral release and the intent of the parties made clear they no longer intended their employment agreement to serve as the source of any requirement or liability).

The Separation Agreement affirms certain pre-existing agreements. It notes Liebl's continuing obligations under Mercury's Insider Trading Policy. Am. Compl. Ex. A at ¶ 4. It specifically affirms all the provisions of the Proprietary Information Agreement. *Id.* at ¶ 5. Relevant to Liebl's claim, it refers to the Stock Option Agreements by providing that "[a]fter your Separation Date, you will have 30 days to exercise your vested stock options in accordance with the terms of the applicable option agreement." *Id.* at ¶ 4. The Proprietary Information Agreement and the Stock Option Agreements do not contain arbitration clauses. Pl. Resp. Ex. B; *Id.* Ex. C.

The Separation Agreement does not specifically affirm the 2006 Compensation Plan or the Dispute Resolution Policy. In fact, its terms modify the 2006 Compensation Plan. Under the 2006 Compensation Plan, Liebl is entitled to commissions from transactions properly submitted up to his last day of work. Def. Mot. Ex. 3. The Separation Agreement provides that Liebl will be paid commissions as set forth in his compensation plan only for transactions closed as of June 30, 2006, over two months before his separation date of September 8th. Am. Compl. Ex. A at ¶ 3(b). The facts that the Separation Agreement fails to explicitly affirm the 2006 Compensation Plan or the Dispute Resolution Policy, and actually modifies the Plan, suggest the parties intended the Separation Agreement to release obligations under those agreements except as specifically indicated.

Mercury argues that the Dispute Resolution Policy has never been modified or terminated, and therefore is still in force. By its terms, the Dispute Resolution Policy can only be modified or amended by a writing signed by the party to be charged. Def. Mot. Ex. 1, General Provisions at ¶ 3. In support of its argument, Mercury submits the declaration of Edward Hayden, senior director, that Liebl and Mercury have not executed any written modification, amendment or waiver of the provisions of the 2006 Compensation Plan or Dispute Resolution Policy. *Id.* Ex. 3 at ¶ 3. This

argument is without merit. First, as Liebl correctly notes, the Separation Agreement meets the Dispute Resolution Policy's modification requirement because it is in writing, and it is signed by Liebl and Mercury. Am. Compl. Ex. A. Second, the Separation Agreement clearly modifies the 2006 Sales Commission Plan establishing a new cutoff date for the payment of commissions. The Separation Agreement also modifies the Dispute Resolution Policy because it generally releases claims that would have been resolved under the Policy. *Id.*

Mercury's request that Liebl sign an arbitration agreement after his separation date supports his argument that Mercury did not believe the Dispute Resolution Policy's arbitration clause was still in force. The original Proprietary Information Agreement Liebl signed upon joining Mercury does not contain an arbitration clause. Pl. Resp. Ex. B. The original agreement is specifically affirmed by the Separation Agreement. Am. Compl. Ex. A at ¶ 5. The proposed new Proprietary Information, Assignment of Inventions, and Arbitration Agreement sent to Liebl for signature after his separation date contains an arbitration clause. Pl. Resp. Ex. A. Mercury's effort to secure Liebl's signature on a new arbitration agreement weakens its argument that the Dispute Resolution Policy is still in force.

The court is not satisfied that Liebl's present claim under the Separation Agreement falls within the Dispute Resolution Policy. The language of the Separation Agreement and the surrounding circumstances suggest that the parties did not intend for the Dispute Resolution Policy, including its arbitration clause, to continue in effect after execution of the Separation Agreement. Accordingly, Mercury's motion for a stay under section 3 of the FAA must be denied.

**III. Venue**

The Dispute Resolution Policy's forum selection clause requires arbitration in California. However, resolving the factual disputes in Liebl's favor, the Dispute Resolution Policy is superseded

by the Separation Agreement. *Nagel*, 995 F. Supp. at 843. Therefore, dismissal for improper venue on the basis of the Dispute Resolution Policy's forum selection clause is inappropriate. *Cont'l Casualty Co.*, 417 F.3d at 733.

A civil action based on diversity jurisdiction may be brought in a district in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391. Liebl's allegations are sufficient to establish proper venue in this forum pursuant to 28 U.S.C. § 1332. Am. Compl. at ¶ 4. Execution of the Separation Agreement, performance of his employment obligations to Mercury, and accrual of his damages occurred in this district. *Id.* at ¶ 5. Mercury does not challenge Liebl's jurisdiction or venue allegations; it argues venue is improper because the Dispute Resolution Policy requires arbitration in another venue. Because Liebl's present claims are not referable to arbitration, Mercury's motion to dismiss for improper venue must be denied.

## CONCLUSION

For the reasons stated above, Mercury's motion to dismiss the amended complaint or, alternatively, for a stay pending arbitration is denied.

ENTER:

Suzanne B. Conlon
United States District Judge

December 12, 2006